O

# United States District Court
# Central District of California

| | |
|---|---|
| MORRIS REESE,<br><br>          Plaintiff,<br><br>     v.<br><br>TRACFONE WIRELESS, INC.,<br><br>          Defendant. | Case No. 2:13-cv-05196-ODW(PLAx)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [30]** |

## I.   INTRODUCTION

Plaintiff Morris Reese notified virtually the entire cellular wireless industry of U.S. Patent No. 6,868,150 ("the '150 Patent") in 2005 through letters alleging that providing call-waiting and caller-ID services infringed the '150 Patent.  But it was not until May 2013—more than eight years later—that Reese filed patent-infringement suits against the five cellular wireless providers.  Finding this delay unfair, the wireless providers, including Defendant TracFone Wireless, Inc., all individually filed motions for summary judgment against Reese based on the defense of laches.  Faced with dismissal of his current suits because of his prolonged delay, Reese now offers excuses—such as his illness and involvement in other litigation—to justify his delay in bringing suit.  Because none of Reese's explanations excuse his delay, the Court **GRANTS** TracFone's Motion for Summary Judgment.  (ECF No. 30.)

## II.  FACTUAL BACKGROUND

Reese is the sole named inventor on the '150 Patent, which issued on March 15, 2005. (SUF ¶¶ 1–2; Ex. 1.)  The '150 Patent relates to the combination of Caller ID and Call Waiting. ()  The '150 Patent is a continuation of the '009 Patent which issued July 30, 2002.  The '150 Patent expired in 2011, two years prior to Reese's suit against TracFone. (*Id.* ¶ 3.)

TracFone sells prepaid wireless cellular devices throughout the United States. (*Id.*¶ 5.)  TracFone is a Mobile Virtual Network Operator ("MNVO") that does not own or operate any wireless communication networks. (*Id.*¶ 4.)  Rather, TracFone utilizes the wireless communication networks provided by network operators—including AT&T Mobility II LLC, Verizon Wireless Services, LLC, and T-Mobile USA, Inc. (*Id.* ¶ 5.)  TracFone is a customer and indemnitee of the network operators. (*Id.* ¶¶ 4, 22.)

TracFone sells prepaid wireless cellular devices at prominent national retailers—including Wal-Mart, CVS, Walgreens and Dollar General. (*Id.* ¶ 7.)  TracFone has been operating under the TracFone brand since 1996. (*Id.* ¶ 6.)  In 2005, TracFone had over 6 million customers. (*Id.* ¶ 7.)  By 2007 TracFone was the sixth-largest wireless provider in the Country with approximately 9.5 million customers. (*Id.* ¶¶ 9–10.)  TracFone's prepaid wireless cellular devices have included call-waiting and caller-ID features since 2001. (*Id.* ¶ 14.)  TracFone has continuously advertised and marketed those features. (*Id.*)

Between April and June of 2005, Reese sent infringement-allegation letters to at least twelve different telecommunications companies—BellSouth, Cingular Wireless, Motorola, Nextel, Nokia, Qwest Communications, Samsung, SBC Communications, Sprint, T-Mobile, Verizon Communications, and Verizon Wireless.  (*Id.* ¶ 15.)  TracFone did not receive an infringement-allegation letter from Reese. (*Id.*)  Reese asserts that he was not aware of TracFone at the time he sent the infringement-allegation letters.  (Reese Decl. ¶ 13.)

Between 2005 and 2013, Reese litigated several other patent-infringement lawsuits across the country.[1] (SUF ¶ 16.) Four of these suits involved the '150 Patent or its immediate parent. (*Id.* ¶ 17.) Reese was represented by counsel for all of these suits, with the exception of *Reese v. Verizon Cal., Inc. et al.*, Case No. CV-11-01934 SJO (C.D. Cal. Aug. 11, 2011), which he litigated pro se. (Reese Decl. ¶ 33.)

From 2000 to 2008, Reese experienced serious heath problems. Reese began dialysis treatments for renal failure in 2000. (*Id.* ¶ 29.) Reese's dialysis treatments were performed three times per week until Reese had a kidney transplant in 2008. (*Id.* ¶¶ 30–32.)

On May 29, 2013, Reese filed suit against TracFone—along with the cellular wireless providers who operate the networks: Verizon Wireless, Sprint Nextel Corporation, United States Cellular Corporation, AT&T Mobility LLC, and T-Mobile USA, Inc. (*Morris Reese v. Sprint Nextel Corporation et al.*, 2:13-cv-03811-ODW-PLA (C.D. Cal. May 29, 2013) ECF No. 1.) The Court severed the case on July 15, 2013. (*Id.* ECF No. 18.) Reese refiled a separate complaint against TracFone on July 18, 2013. (ECF No. 1.)

## III. LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the

---

[1] *Reese v. BellSouth Telecommunications*, No. 5:97-cv-00568-BO (E.D.N.C Nov. 14, 1997); *Reese v. U.S. West Inc.*, No. 98-cv-80575-CRW (S.D. Iowa Mar. 12, 1999) (transferred to *Reese v. U.S. West Inc.*, No. 1:99-cv-00773-WDM-MJW (D. Col. Sept. 23, 2002)); *N. Telecom, Inc. v. Reese*, No. 2:98-cv- 09591-LGB (C.D. Cal. Feb. 9, 1999) (transferred to *N. Telecom, Inc. v. Reese*, No. 4:99-cv-80081-CRW (S.D. Iowa Mar. 10, 1999)); *Reese v. Aastra Technologies*, No. 2:03-cv-00267-TJW (E.D. Tex. Feb. 9, 2005); *Reese v. Samsung Telecommunications America, L.P.*, No. 2:05-cv- 00415-DF (E.D. Tex. Jan. 31, 2007); *Reese v. Southwestern Bell Telephone, L.P., et. al.*, Case No. 2:07-CV-219 (E.D. Tex. Dec. 23, 2008); and *Reese v. Verizon California, Inc. and AT&T California*, Case No. CV-11-01934 SJO (C.D. Cal. Dec. 21, 2012).

pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c).  Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.*  Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV.   DISCUSSION

In the interest of fairness, those who are granted a monopoly under the patent system have an obligation to enforce their rights in a timely manner.  A defendant in a patent-infringement suit may raise the equitable defense of laches when the plaintiff is dilatory bringing suit and that delay prejudices the defendant. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1030 (Fed. Cir. 1992).  In patent cases, laches bars recovery of damages for any infringement that occurs prior to the filing of suit. *Id.* at 1040.  A laches defense is a matter within the trial court's discretion based on consideration of all of the facts in a particular case. *Id.* at 1040–41.

To prevail on a laches defense, a defendant must prove by a preponderance of the evidence that: (1) the plaintiff knew or should have known of the infringement and with that knowledge delayed filing suit for an unreasonable and inexcusable length of time, and (2) the defendant was materially prejudiced by the delay. *Id.* at 1032; *see also Hearing Components, Inc. v. Shure, Inc.*, 600 F.3d 1357, 1375 (Fed. Cir. 2010).

Where the delay in filing the suit exceeds six years, the court will presume the delay was unreasonable and prejudicial to the defendant. 35 U.S.C. § 286; *Hearing*, 600 F.3d at 1375 (citing *Aukerman*, 960 F.2d at 1035–36.) The burden is then on the plaintiff to prove the existence and reasonableness of an excuse for the delay, and to show a lack of prejudice to the infringer. *Hearing*, 600 F.3d at 1375.

Determining the length of the delay involves two sub-issues: when the delay period begins to run and when the delay period ends. The delay period begins to run from the time that the plaintiff had actual or constructive knowledge of the alleged infringing activities. *Aukerman*, 960 F.2d at 1032; *Hearing Components*, 600 F.3d at 1375. But the plaintiff need not be certain that the conduct is infringing; time starts to run when the patentee is aware of sufficient facts to form a reasonable belief that some infringing conduct exists. *Aukerman,* 960 F.2d at 1032. The delay period ends no later than the date of the filing of suit. (*Id.*)

The reasonableness of the delay is not determined by application of mechanical rules. *Aukerman*, 960 F.2d at 1032. Rather, the reasonableness of the delay depends on the particular facts and circumstances of the individual case. *Id.* The court must consider and weigh any justification offered by the plaintiff for its delay. *Id.* at 1033.

Prejudice to the defendant may be either economic or evidentiary. *Id.* Economic prejudice arises when a defendant incurs damages that would likely have been prevented by earlier suit. *See id.* Economic prejudice is not merely damages attributable to patent infringement liability. *Id.* at 1033. Evidentiary or "defense" prejudice arises when the defendant can no longer present a full and fair defense on the merits due to the plaintiff's delay. *Id.* at 1032. This inability may be occasioned by "the loss of records, the death of a witness, [or] the unreliability of memories of long past events." *Id.*

TracFone asserts that it is entitled to a laches presumption because Reese delayed filing his patent-infringement suit for over six years after constructive knowledge of TracFone's alleged infringement. In the alternative, TracFone asserts

that it can claim the benefit of the other Defendants' laches presumption as a customer and indemnitee of the network providers. Reese argues that TracFone is not entitled to a laches presumption because he was not aware of TracFone at the time he sent the letters to the other wireless-provider defendants. In the alternative, Reese argues that he can rebut the laches presumption because his delay was reasonable and resulted in no prejudice to TracFone. The Court considers each in turn.

**A. Laches Presumption**

TracFone argues that Reese had constructive knowledge of TracFone's allegedly infringing products in 2005—or at the very least 2007. TracFone asserts that regardless of which date the Court accepts, Reese's failure to file suit until 2013 entitles TracFone to a presumption of laches under § 286. Reese contends that because he was not aware of TracFone at the time he sent the letters to the other wireless-carrier Defendants the Court should not impose on him constructive knowledge of TracFone's infringement.

The equitable nature of laches does not demand actual knowledge of infringement to trigger. *See Aukerman*, 960 F.2d at 1032. The delay period begins at "the time the patentee knew, or in the exercise of reasonable diligence should have known, of the allegedly infringing activity." *Id.* Thus, in some circumstances courts impose an affirmative duty on patent owners to police their rights, and will impose constructive knowledge based on the required reasonable, diligent inquiry.

Imposition of constructive knowledge of infringement is appropriate in circumstances where there are "pervasive, open, and notorious activities" that a reasonable patentee would suspect were infringing. *Wanlass v. General Elec. Co.*, 148 F.3d 1334, 1338 (Fed. Cir. 1998). Significant "sales, marketing, publication, or public use of a product similar to or embodying technology similar to the patented invention . . . gives rise to a duty to investigate whether there is infringement. *Id.*; *Hall*, 93 F.3d at 1553. A duty to investigate may also be imputed when "[the patentee] has no actual knowledge of the sales, marketing, publication, public use, or other conspicuous

activities of potential infringement if these activities are sufficiently prevalent in the inventor's field of endeavor." *Id.*

Based on the undisputed facts, Reese was, at the latest, on constructive notice of TracFone's infringing activity as of 2007, when TracFone became the sixth-largest wireless provider as measured by customer base. (SUF ¶ 10.)  Even if Reese had no actual knowledge of TracFone's sales and marketing—which is doubtful considering TracFone's well-established nationwide business—he may still be charged with constructive knowledge of TracFone's potential infringement based on its prevalence in the field.

In 2007, TracFone's marketed and sold its wireless cellular devices to over 6 million customers. (*Id.* ¶ 10.) Its activities were open, pervasive, notorious, and fit squarely within Reese's field of endeavor—telecommunications.  It is undisputed that TracFone's wireless cellular devices utilized caller-ID and call-waiting technology since at least 2001. (*Id.* ¶¶ 6, 14.)  It is also undisputed that TracFone's wireless cellular devices were sold by well-known nationwide retailers such as Wal-Mart, CVS, and Dollar General. (*Id.* ¶ 7.)  Despite TracFone's commercial success,[2] Reese never undertook any investigation of TracFone and its infringing activities.  Reese ignored TracFone when he sent the 2005 infringement-allegation letters to the wireless-carrier defendants—despite the fact that TracFone is a competitor of those defendants in a field with few competitors.  A reasonable patentee, under the circumstances, would have at the very least investigated TracFone—and Reese's active enforcement history demonstrates that Reese is a more-than-capable litigant, shrewd at enforcing his patent rights.

Of course Reese did not have a duty to police the entire wireless-telecommunications industry by testing any and all questionable products.  But the

---

[2] TracFone's success has continued.  Its customer base has increased over time, swelling to 8 million in 2006, 9.5 million in 2007, 11 million in 2008, 14 million in 2009, and over 17.5 million in 2010. (SUF ¶¶ 9–13.)

law imposes a duty to investigate a particular product if and when publicly available information about it should have led him to suspect that product of infringing. *Accord Wanlass*, 148 F.3d at 1338; *Hall*, 93 F.3d at 1553 (finding constructive knowledge where the defendant sold and marketed allegedly infringing products through print advertisements and trade shows) *Avocet Sports Tech. Inc v. Polar Electro Inc*, No. C-12-02234 EDL, 2013 WL 1729668 at *4–5 (N.D. Cal. Apr. 16, 2013); *I/P Engine, Inc. v. AOL Inc.*, No. 2:11cv512, 2012 WL 5880265, at *2–6 (E.D. Va. Nov. 20, 2012); *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, No. 05–608 (MPT), 2010 WL 170249, at *4–7 (D. Del. Jan. 15, 2010).

Accordingly, after considering the totality of undisputed evidence presented, the Court finds it appropriate to impose on Reese constructive notice of TracFone's infringing products as of 2007. Reese did not file his infringement suit against TracFone until 2013, which amounts to a six-year delay. Thus, under § 286, TracFone is entitled to the laches presumption.[3] Consequently, the burden is on Reese to "come forward with evidence sufficient to put the existence of these presumed undisputed facts into genuine dispute, either by showing that the delay was reasonable or that the movant did not suffer prejudice caused by the wait." *Id.* at 1038.

**B. Reasonableness of the delay**

Reese argues that even if he can be charged with knowledge of TracFone's infringement in 2005, his delay in filing suit was reasonable. Reese proffers two justifications for his delay: his involvement in other litigation and his worsening medical condition. Reese also claims he is entitled to leniency because he was representing himself for some of the litigation. The Court addresses each in turn.

First, Reese argues that his six-year delay in filing suit against TracFone was reasonable because he was extensively involved in other litigation. On August 31,

---

[3] Because the Court finds that TracFone is entitled to the laches presumption based on Reese's constructive knowledge of TracFone's alleged infringement, it need not determine whether TracFone, as a customer and indemnitee of the network-provider defendants, can claim the benefit of their laches presumption.

1  2005, Reese filed suit against cellular phone manufacturers Samsung, Motorola, Sony,
2  Siemens, LG, RiM and Palm, alleging infringement of the '009 Patent (the immediate
3  patent of the '150 Patent).  (Reese Decl. ¶ 17.)  That suit continued through January
4  31, 2007.  (*Id.* ¶ 18.)  Four months later, Reese sued land-line telephone service
5  providers Southwestern Bell Telephone Company, GTE Southwest, and their parent
6  companies AT&T and Verizon, for infringement of the '150 Patent.  (*Id.* ¶ 21.)  Reese
7  voluntarily dismissed AT&T and Verizon from that action, but later brought a separate
8  suit against the same companies that lasted from March 2011 to December 21, 2012.
9  (*Id.* ¶¶ 24, 33.)  Approximately five months later, Reese filed this action against
10 TracFone, again alleging infringement of the '150 Patent.

11 　　　　Involvement in other enforcement litigation may, in some circumstances,
12 excuse a plaintiff's delay in suing an alleged infringer.  But the Federal Circuit has
13 held that a plaintiff's calculated choice to proceed with certain lawsuits while delaying
14 others—absent other factors—is a strategic decision that does not excuse or otherwise
15 toll the presumption period for laches.  *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548,
16 1554 (Fed. Cir. 1996).

17 　　　　In *Hall*, the Federal Circuit noted that delay occasioned by involvement in other
18 enforcement litigation *may* be reasonable if the alleged infringer has knowledge of
19 (1) the existence of the other litigation, and (2) the plaintiff's intent to enforce its
20 rights against the infringer at the conclusion of the other litigation.  *Hall*, 93 F.3d at
21 1554; *accord Aukerman*, 960 F.2d at 1039.  Here, there is no evidence that TracFone
22 knew of Reese's other litigation, nor of his intent to sue TracFone after it concluded.
23 Reese's choice to strategically pursue other lawsuits while ignoring TracFone is
24 legally insufficient to overcome the presumption of unreasonable delay.

25 　　　　Second, Reese argues that his delay in bringing suit was reasonable because of
26 the serious health problems he experienced from 2000 to 2008.  He argues that his
27 ability to sue TracFone was significantly restricted because of his frequent dialysis
28 treatments and eventual kidney transplant.

1         Generally, illness is not recognized as an adequate excuse for a plaintiff's delay
2    in bringing suit.  And although Reese certainly was afflicted with a debilitating illness,
3    Reese's assertion that his delay was necessary because of his failing health is directly
4    contradicted by his previous excuse—his extensive involvement in other litigation.
5    Notwithstanding his poor health, Reese was able to file multiple suits against other
6    infringers during his illness and litigate them to conclusion.  (Reese Decl. ¶¶ 17–33.)
7    The fact that Reese was able to competently litigate several other lawsuits undermines
8    his contention that he was physically unable to pursue lawsuits against TracFone.
9         Moreover, Reese ignores the five years that have passed since his kidney
10   transplant.  Even after his health issues ended in 2008, Reese did and said nothing
11   until he filed suit in 2013.  Reese does not assert that his health issues continued after
12   2008.  Thus, at a minimum Reese had three years after the resolution of his health
13   issues before laches would be presumed.
14        Finally, an inability to find willing counsel, another of Reese's excuses, is
15   widely rejected as a legally cognizable reason to excuse an unreasonable delay in
16   filing suit.  *Hall*, 93 F.3d at 1554.  Additionally, Reese's litigation history shows that
17   he has used multiple counsel at various times, and was fully capable of engaging in
18   different litigation activities with different counsel—or by himself.

### C. Prejudice

20        A plaintiff can also rebut the laches presumption by raising a genuine fact issue
21   regarding the absence of prejudice to the defendant.  *Aukerman*, 960 F.2d 1030.  Reese
22   contends that his delay did not materially prejudice TracFone.  But Reese attempts to
23   prove this lack of prejudice by asserting that *TracFone* has failed to demonstrate that it
24   has been prejudiced by Reese's delay—thus placing the burden of production on
25   TracFone.  This is incorrect; the *Auckerman* presumption places the burden of
26   production on the plaintiff.  *Hall*, 93 F.3d at 1553.  Thus it is Reese's burden to come
27   forward with affirmative evidence of a lack of prejudice.  TracFone may remain
28   / / /

"utterly mute on the issue of prejudice and nonetheless prevail[]." *Hall*, 93 F.3d at 1554.

### 1. *Evidentiary prejudice*

Reese has provided no affirmative evidence that TracFone will not suffer evidentiary prejudice from his eight-year delay. In contrast, TracFone argues that they will suffer evidentiary prejudice because Reese is unable to account for evidence relevant to TracFone's defense of this action. Reese does not dispute that he no longer has a complete of set documents produced in or generated during the course of his prior litigation relating to '150 Patent. (SUF ¶ 18; Mot. Exs. 13, 14.) To date, Reese has been unable to produce all the documents that existed for the *US West*, *Northern Telecom*, *Aastra*, *Samsung*, or *Verizon California* cases. Additionally, Reese does not dispute that he no longer has a complete set of licensing agreements for the '150 or related patents. (SUF ¶ 19; Mot. Exs. 13,14.) Reese's prior counsel also admitted to destroying 68 folders of documents related to Reese's prior litigation—some of which directly involved the '150 Patent. (SUF ¶ 20, Ex. 15.)

The loss of these documents is problematic for three major reasons. First, because the licenses—many of which were given to cell-phone-handset manufacturers—may protect TracFone from Reese's infringement allegations. If Reese licensed customers to use handsets that subscribe to TracFone's services, that license may protect TracFone from infringement claims. Second, those licenses are essential to allow TracFone to propose a reasonable-royalty rate for any potential damages involving unlicensed products. Finally, TracFone's inequitable conduct defense and counterclaim will likely suffer from Reese's inability to produce documentation from his prior litigations—documentation which TracFone asserts was material and not disclosed during the examination of the '150 Patent. In the absence of this evidence, TracFone's opportunity to defend itself against Reese's infringement claim is somewhat less than "full and fair."

/ / /

1    Reese attempts to argue that TracFone should endeavor to reconstruct the
2 evidence for its defense, which he alleges should still be available from some other
3 sources. But Reese presents no authority for his novel proposition that TracFone is
4 required to attempt to gather whatever evidence remains and hope that it works for
5 their defense. This burden lies with Reese, not TracFone. Consequently, Reese has
6 not met his burden to come forward with affirmative evidence of a lack of evidentiary
7 prejudice.

   2. *Economic prejudice*

9    Reese also argues that TracFone has failed to prove that it has been
10 economically prejudiced by Reese's delay in filing. But again, it is not TracFone's
11 burden, as Reese argues, to demonstrate economic prejudice in light of the laches
12 presumption. Rather, Reese has the burden of proving that TracFone has not been
13 economically prejudiced by Reese's delay—which he does not attempt to do in his
14 Opposition. Reese merely attacks TracFone's assertions of economic prejudice as
15 "largely conclusory and lack[ing] any proof." (Opp'n 15.) This is insufficient.
16 Accordingly, Reese has failed to adduce any affirmative evidence that TracFone has
17 not been economically prejudiced by Reese's at least six-year delay in filing suit.
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## V.   CONCLUSION

Based on the undisputed facts, TracFone is entitled to the presumption of laches.  Reese has failed to prove that his delay was reasonable, or that TracFone suffered no prejudice as a result of the delay.  Accordingly, for the reasons discussed above, TracFone's Motion for Summary Judgment is **GRANTED**.  (ECF No. 30.)  A Judgment will issue.  The parties are directed to file a joint status report detailing what issues, if any, remain for this Court to resolve.

**IT IS SO ORDERED.**

May 9, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**